UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES EDWIN KING,<br><br>Defendant. | Crim. Action No. 18-318 (JDB) |

## MEMORANDUM OPINION & ORDER

Defendant James Edwin King moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the severe COVID-19 outbreak at Federal Correctional Institution Fort Dix ("FCI Fort Dix") and his medical conditions. See Mot. for Compassionate Release ("Release Mot.") [ECF No. 42] at 1. King is sixty-three years old and currently incarcerated at the minimum-security satellite camp at FCI Fort Dix, where he has served about 22 months of a 132-month sentence for wire fraud, bribery, and falsification of records. See id. at 1; Judgment [ECF No. 19] at 1–3. His projected release date is September 3, 2028. See Reply to Gov't's Opp'n to Mot. for Compassionate Release ("Reply") [ECF No. 44] at 7. King tested positive for COVID-19 in April 2020. Id. at 1. In May 2020, he filed a similar motion which this Court denied, finding that although his vulnerability to serious illness if re-infected with COVID-19 was an "extraordinary and compelling" reason for release, the sentencing factors in 18 U.S.C. § 3553(a) strongly weighed against sentence reduction because King had served only 10 percent of his sentence. See Order (July 6, 2020) [ECF No. 38] at 3–4.

Now King contends that his "ongoing health issues, the continuously worsening situation at FCI Fort Dix, as well as the development of new strains of COVID make release necessary in this case." See Reply at 1. The government opposes the motion, arguing that little has changed

since the Court's last ruling: King has still "served only a small fraction" of his sentence and therefore the § 3553(a) factors continue to counsel against his release. See Opp'n to Def.'s Mot. for Compassionate Release ("Opp'n") [ECF No. 43] at 1. The government also argues that King has received adequate medical care at FCI Fort Dix and is unlikely to become re-infected with COVID-19. Id. at 9–11. For the reasons explained below, the Court agrees with the government and will deny King's motion for release.

Under the First Step Act of 2018, a court may, upon motion of the Bureau of Prisons ("BOP") or a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it concludes that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Demirtas, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020). And a court may consider a defendant's motion for reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To start, the parties agree that more than thirty days have passed since King presented his request for compassionate release to the warden at FCI Fort Dix. See Release Mot. at 2; Opp'n at 8–9.[1] Hence, the Court will proceed to the merits of King's motion.

---

[1] King presented his request to the warden in May 2020 and does not appear to have filed a new administrative request since the Court denied his earlier motion in July. As the government concedes, King has nevertheless satisfied the exhaustion requirement because the reasons for release underlying his motion are very similar to those presented in his May 2020 administrative request, with the only difference being the evolving COVID-19 situation at FCI Fort

The government concedes that there remain "extraordinary and compelling" reasons for King's release. See Opp'n at 9 ("Despite establishing an 'extraordinary and compelling' reason, Defendant's sentence should not be reduced."). As this Court previously noted, King has "multiple medical conditions" that exacerbate his risk of severe outcomes from COVID-19, including type 2 diabetes, obesity, hypertension, and possibly asthma. See Order (July 6, 2020) at 2–3. Those conditions have not ceased, see Reply at 1–2, nor has the presence of COVID-19 at FCI Fort Dix, see id. at 2–4. Since July, at least two massive outbreaks have occurred: active cases topped 300 in November 2020 before waning and then rose again to over 800 by early January. See George Woolston, 'Clear and Present Danger': U.S. Rep. Kim Calls for FCI Fort Dix Lockdown as Cases Top 800, Burlington Cnty. Times (Jan. 12, 2021), https://www.burlingtoncountytimes.com/story/news/2021/01/11/u-s-rep-kim-calls-fci-fort-dix-lockdown-cases-top-800/6632119002/. FCI Fort Dix houses 2,725 inmates, and a staggering 1,808 (along with 45 staff members) have recovered from COVID-19. See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited Mar. 9, 2021). Tragically, one inmate died from the virus. Id. BOP currently reports 31 active inmate cases and 39 active staff cases at FCI Fort Dix. Id.

Although King has medical conditions that generally increase the risk of severe outcomes from COVID-19, the government emphasizes that he already contracted the virus in April 2020 and recovered without serious complications. See Opp'n at 9–10. While some courts have granted compassionate release to inmates who were deemed "recovered" from COVID-19, others have found no extraordinary and compelling circumstances where an inmate endured COVID-19

---

Dix. See Opp'n at 9; United States v. Walker, No. 13-cr-30042-001 (SEM), 2020 WL 6363841, at *2 (C.D. Ill. Oct. 29, 2020) (finding that a second administrative claim is not required when the reasons for release are substantially the same as the original claim).

without complications and received adequate care.  Compare Def.'s Reply to Gov't's Opp'n to Def.'s First Mot. for Compassionate Release [ECF No. 37] at 6–7 (collecting cases where courts granted release to inmates who had already contracted COVID-19), with United States v. Williams, No. 3:11-cr-172-1 (VLB), 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020) ("This Court and others have declined to find 'extraordinary and compelling circumstances' in cases where a defendant has a prior COVID-19 diagnosis.").[2]  Here, King was not asymptomatic: he experienced head pains, chills, occasional dry cough, chest tightness, shortness of breath, weakness, and fever, and he developed pneumonia.  See Reply at 1–2.  In early May, King tested negative for COVID-19, see Opp'n at 3, but he reported lingering effects up through October, including headaches, shortness of breath, lethargy, loss of smell, and rapid heart rate, see Reply at 2, 6.

Recent medical records indicate that King's health has improved and he is receiving adequate care.  On December 24, King was placed in exposure quarantine, "denie[d] any COVID like symptoms," and tested negative a few days later.  See Opp'n at 11; Reply at 2.  King's heart rate, respiratory rate, oxygen saturation, and temperature were normal on January 5 and January 13, 2021.  See Def.'s Medical Records [ECF No. 45] at 5–6.  While his blood pressure was high on both dates, it dropped notably after King was placed on the pill line to monitor his compliance

---

[2] See also, e.g., United States v. Baker, No. 12-10076-01-JTM, 2021 WL 699935, at *2 (D. Kan. Feb. 23, 2021) (declining to release defendant with type 2 diabetes because "[g]iven Baker's previous recovery from Covid-19 within BOP custody and the lack of any particularized showing that Baker is suffering from post-infection symptoms that make it more difficult for him to provide self-care or receive adequate treatment within the BOP system, the court finds that he has not shown sufficiently extraordinary circumstances based upon the risk of re-infection with Covid-19"); United States v. Jenkins, No. 4:15-cr-16-SEB-VTW-01, 2021 WL 665854, at *4 (S.D. Ind. Feb. 19, 2021) ("To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19—even when that defendant has risk factors for severe symptoms."); United States v. Estrada, Crim. A. No. 12-581-1, 2021 WL 308271, at *1 (E.D. Pa. Jan. 29, 2021) ("Mr. Estrada has already tested positive for COVID-19 and did not become seriously ill.  Prior infection does not completely eliminate Mr. Estrada's risk from the virus, but does contribute to our finding that Mr. Estrada's personal risk from COVID-19 is not extraordinary and compelling.").

with taking medication.  See id. at 2, 5.  And although King notes that his CPAP machine was

broken during a move out of isolation, see Reply at 2, he does not claim to be suffering from its

absence and his medical records do not reflect any CPAP prescription or related complaints.

In denying King's earlier motion, this Court noted that it could not "dismiss the risk of re-

infection when authorities like the Center[s] for Disease Control and Prevention and the World

Health Organization do not yet know whether antibodies in those who have recovered from

COVID-19 ensure immunity."  Order (July 6, 2020) at 2.  Current CDC guidance reports that

"[c]ases of reinfection with COVID-19 have been reported, but remain rare."   See CDC,

Reinfection       With        COVID-19,        https://www.cdc.gov/coronavirus/2019-ncov/your-

health/reinfection.html (last updated Oct. 27, 2020).  Accordingly, some courts have held that the

risk of reinfection is not an extraordinary and compelling reason for release, even for defendants

with underlying conditions.  See, e.g., United States v. Jeter, No. 18-cr-48-RDM-2 (D.D.C. Feb.

12, 2021) (minute order denying reconsideration of compassionate release motion) ("[T]he

evidence that [the defendant] is at risk of contracting COVID-19 again over the next few months

is at best inconclusive. . . . [T]he Court cannot conclude that the risk of re-infection qualifies as an

extraordinary and compelling reason warranting release.").[3]  Other courts, like this one, "have

opted to err on the side of caution to avoid potentially lethal consequences for [defendants] because

simply announcing that an inmate has recovered does not mean [he] is completely safe from the

virus."  See United States v. Anderson, No. 2:07-cr-00096-KJM, 2021 WL 53122, at *3 (E.D. Cal.

---

[3] See also, e.g., United States v. Corso, No. 17-CR-89-9 (CS), 2021 WL 467186, at *1 (S.D.N.Y. Feb. 9,
2021) (denying compassionate release to FCI Fort Dix inmate because, among other things, "reinfections are
vanishingly rare" (internal quotation marks and citation omitted)); United States v. Johnson, No. 2:12CR109-PPS,
2020 WL 7244979, at *1 (N.D. Ind. Dec. 9, 2020) ("Even if the frightening reports of a second fatal infection with
COVID-19 are entirely accurate, they . . . are so few in number that they do not provide extraordinary or compelling
reasons" for release.); United States v. Risley, No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17,
2020) ("Courts generally find that the risk of a second infection does not constitute sufficiently compelling grounds
to justify compassionate release.").

Jan. 6, 2021) (internal quotation marks and citation omitted) (collecting cases); Order (July 6, 2020) at 2.[4]

This Court remains reluctant to wholly dismiss King's risk of reinfection.  CDC guidance stating that reinfection remains rare was last updated more than five months ago, before substantial research on new virus variants emerged.  That research suggests that new variants may be resistant to antibodies from original virus strains.  See Opp'n at 5–6 (collecting studies); Carl Zimmer, Virus Variant in Brazil Infected Many Who Had Already Recovered From Covid-19, N.Y. Times (Mar. 1, 2021), https://www.nytimes.com/2021/03/01/health/covid-19-coronavirus-brazil-variant.html (reporting findings that the Brazilian P.1 variant has "the ability to infect some people who had immunity from previous bouts of Covid-19").  Even putting variants aside, it is unclear how long natural immunity lasts.  See CDC, Interim Clinical Guidance for Management of Patients with Confirmed    Coronavirus    Disease    (COVID-19),    https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last updated Feb. 16, 2021) ("[I]t is still unclear how long people who have recovered from COVID-19 are protected against reinfection with SARS-CoV-2.").  The government cites findings that "acquired immunity from an initial COVID-19 infection offers protection against reinfection for six months or maybe longer."  See Dr. Francis Collins, Study of Healthcare Workers Shows COVID-19 Immunity Lasts Many Months, NIH Director's Blog (Dec. 8, 2020), https://directorsblog.nih.gov/2020/12/08/study-of-healthcareworkers-shows-covid-19-immunity-lasts-many-months/.    Because   King   contracted

---

[4] See also, e.g., United States v. Secchiaroli, 17-CR-179-RJA, 2021 WL 614632, at *6 (W.D.N.Y. Feb. 17, 2021) (granting compassionate release to FCI Fort Dix inmate and noting that "even though Defendant previously contracted the virus and presumably would have some degree of immunity, it is conceivable that he could be re-infected and experience a severe case of COVID-19" because "[m]uch is currently unknown about COVID-19 reinfection or how long immunity lasts"); United States v. Fernandez, No. 2:16-CR-00115-KJM, 2020 WL 5909490, at *4 (E.D. Cal. Oct. 6, 2020) ("Considering the high level of infection at FCI and USP Lompoc, the lack of scientific certainty regarding whether reinfection is possible after a purported recovery or negative test, or whether COVID-19 immunity lasts, coupled with defendant's prior infection and his multiple health conditions, this court errs on the side of caution and finds defendant's specific risk of reinfection appears to be heightened at FCI Lompoc.").

COVID-19 nearly eleven months ago, his immune response may have faded.

To be sure, King's risk of becoming seriously ill with COVID-19 at FCI Fort Dix has diminished somewhat.  Reinfection, while possible, appears less likely than initial infection, and King has already endured COVID-19 without serious complications.  Moreover, the outbreak at FCI Fort Dix appears to be subsiding.  See supra at 3 (noting that total active cases are down to 70 from over 800 in January and only 31 out of 2,725—or 1.1 percent—of inmates have active cases); see also United States v. Hilliard, No. 17-CR-35-01 (VB), 2021 WL 638957, at *1 (S.D.N.Y. Feb. 17, 2021) (denying release to inmate at FCI Fort Dix who had recovered from COVID-19 and noting that "the recent outbreak at Fort Dix has subsided").  The Court is hopeful that the risk of reinfection will continue to decrease, as FCI Fort Dix has begun vaccinating both inmates and staff against COVID-19.  See BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Mar. 9, 2021).  To date, 183 staff members and 161 inmates have been fully vaccinated, id., and at least some level of natural immunity likely inures to the 66 percent of inmates at FCI Fort Dix who have already recovered from COVID-19.  See United States v. Fields, Crim. No. 19-0048 (PLF), 2021 WL 780738, at *4 (D.D.C. Mar. 1, 2021) (Friedman, J.) (denying release to inmate with obesity and hypertension "[i]n light of the dramatic decline in the number of inmates testing positive for COVID-19 at FCI Loretto, as well as BOP's plan to vaccinate inmates").

Nonetheless, the Court will not depart from its earlier conclusion that there are extraordinary and compelling reasons for King's release.  See Order (July 6, 2020) at 3.  King has—just barely—established extraordinary and compelling reasons because of his medical conditions, the threat of emerging variants, the risk of reinfection, FCI Fort Dix's poor record of

controlling the virus, and the lapse in time since his last infection.[5]  And, as explained above, the

government does not dispute that King has shown extraordinary and compelling circumstances.

See Opp'n at 9.

While King has narrowly demonstrated "extraordinary and compelling reasons" for his

release, this "Court may reduce his term of imprisonment only if the balance of the factors under

§ 3553(a) favors his release."  See United States v. Ayers, Crim. No. 8-364 (JDB), 2020 WL

2838610, at *2 (D.D.C. June 1, 2020); 18 U.S.C. § 3582(c)(1)(A)(i).  But King's 132-month

sentence remains appropriate and not greater than necessary to comply with the purposes of

sentencing.  The "nature and circumstances of the offense," id. § 3553(a)(1), as well as "the need

for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense," and to "afford adequate deterrence to criminal

conduct," id. § 3553(a)(2)(A)–(B), strongly weigh against reducing King's sentence.

King pled guilty to honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346;

bribery, in violation of 18 U.S.C. § 201(b)(2); and falsification of records, in violation of 18 U.S.C.

§ 1519.  See Plea Agreement [ECF No. 6] at 1.  Specifically, King demanded and received bribes

from for-profit schools in exchange for enrolling disabled military veterans in those schools and

facilitated payments to the schools using veterans' federal benefits.  See Statement of Offense

[ECF No. 7].  These long-term bribery and fraud schemes "str[uck] at the heart of an important

Veterans Affairs program . . . designed to aid disabled vets."  Sentencing Tr. [ECF No. 31] at

55:22–24.  "The scheme and fraudulent substandard programs that were a part of it . . . caused

---

[5] King also argues that family circumstances warrant his release because his young daughter is living with his sister and his deceased son's children lack a father figure.  See Release Mot. at 5.  But King does not raise this issue in his reply, and never explains why these family circumstances are extraordinary and compelling.  The Court is sympathetic to King's desire to care for his family but cannot conclude on this record that King's family situation is an extraordinary and compelling reason for release.

significant harm to the Veterans Administration," with losses of over $2.1 million, and "the disabled vets who didn't get the programs that they should have gotten . . . suffered the most." Id. at 4:23–25; 56:2–9.  King's guidelines range was 168 to 210 months of imprisonment followed by one to three years of supervised release.  Statement of Reasons [ECF No. 20] at 1.  On February 15, 2019, the Court sentenced King to 132 months of imprisonment followed by three years of supervised release, varying below the guidelines range.  Judgment at 1–3.

When the Court denied King's original release motion, King had served approximately 10 percent of his sentence.  See Order (July 6, 2020) at 4.  Now, King has served 22 months, approximately 17 percent of his sentence.[6]  As before, reducing King's sentence to time-served would not reflect the seriousness of his offense or provide just punishment, nor would it effectively deter others from engaging in similar bribery schemes.  See United States v. Robinson, Crim. A. No. 16-153-2 (BAH), 2021 WL 736732, at *3 (D.D.C. Feb. 25, 2021) (denying release based on § 3553(a) factors, despite extraordinary and compelling medical reasons, because defendant had served only 24 percent of a 50-month sentence for tax fraud); United States v. Doost, Crim. No. 1:17-cr-00109-APM, 2020 WL 5593936, at *3 (D.D.C. Sept. 18, 2020) (finding that § 3553(a) factors counseled against release because defendant had served only 19 percent of a 54-month sentence for fraud against the United States); United States v. Evans, Crim. A. No. 18-103 (EGS), 2020 WL 3542231, at *1, 5–6 (D.D.C. June 30, 2020) (concluding that § 3553(a) factors weighed against release of defendant who had served less than 22 percent of a 60-month sentence for extortion, fraud, and laundering scheme); United States v. Sears, No. 19-cr-21 (KBJ), 2020 WL 3250717, at *2 (D.D.C. June 16, 2020) (concluding "purposes of punishment would not be served

---

[6] The Court acknowledges that King is eligible for the benefits of the First Step Act, which might allow him to be transferred to a halfway house or supervised release earlier than his current release date of September 3, 2028. See Reply at 8 n.2.

if [defendant's] sentence was reduced from the 71 months of imprisonment that the Court imposed

. . . to the 23 months [defendant] has served up to this point").

The Court acknowledges that King's crimes were not violent, he has no disciplinary record

in prison, and BOP has assessed him as "least likely to recidivate." See Release Mot. at 7.  And

the Court commends King for his accomplishments while incarcerated, particularly his completion

of several educational programs.  See id.  But these points do not create sufficient reason to revisit

the Court's original sentencing determination made just over two years ago, which already varied

below the guidelines range.  In light of the large portion of King's sentence remaining to be served,

"section 3553(a)'s purposes of punishment require maintenance of the original prison term."

United States v. Johnson, 464 F. Supp. 3d 22, 31 (D.D.C. 2020).[7]

Finally, this Court lacks the authority to release King to home confinement without

reducing his sentence.  Placement of a prisoner is the BOP's decision, and "a designation of a place

of imprisonment . . . is not reviewable by any court."  18 U.S.C. § 3621(b).  Under 18 U.S.C.

§ 3624(c)(2), as amended by the First Step Act, only BOP—and not this Court—has the authority

to place prisoners into home confinement.  Although the CARES Act extended the authorized term

of home confinement under this provision, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (to

be codified at 18 U.S.C. § 3621 note), "the law did not grant to courts the authority to determine

whether a prisoner should be placed on home confinement."  United States v. Orji, Crim. A. No.

18-cr-68 (BAH), 2020 WL 5107545, at *4 (D.D.C. Aug. 31, 2020).  Perhaps the Court could, as

King suggests, "reduce Mr. King's sentence to time served and place him on supervised release

for a period up to five years, with home detention for all five years as a condition of supervised

---

[7] Because the Court concludes that the § 3553(a) factors preclude reducing King's sentence, it need not address whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  Moreover, the government does not argue that a reduction would be inconsistent with any such policy statements.

release"—resulting in his release from home confinement "two years short of his current release date."  See Reply at 7–8.  But this would still be a sentence reduction, and so would require the Court to make the requisite findings under § 3582(c).  Thus, because the Court concludes that King is not eligible for a sentence reduction under § 3582(c), the Court will also deny King's request for home confinement.

In sum, although King's risk of severe illness from COVID-19 constitutes an extraordinary and compelling reason for release, a sentence reduction is unwarranted considering the sentencing factors set forth in 18 U.S.C. § 3553(a).  Accordingly, it is hereby **ORDERED** that [42] King's motion for compassionate release is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: <u>March 9, 2021</u>