**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**v.**                                                    **Criminal Action No. 18-318 (JDB)**

**JAMES EDWARD KING,**

**Defendant.**

## <u>MEMORANDUM OPINION</u>

Before the Court is a Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 filed by defendant James Edward King, Mot. to Vacate Set Aside, & Correct Sentence Pursuant to 28 U.S.C. § 2255 [ECF No. 29] ("Def.'s Initial Pet."), as well as an amended petition styled as a supplement, Suppl. in Supp. of Def.'s Initial Pet. [ECF No. 51-1] ("Def.'s Suppl."). King filed his initial petition within the one-year statutory period of limitations, but his supplement was not submitted until more than nineteen months after that period expired. Both submissions allege that King's attorney provided constitutionally ineffective assistance, with the initial petition conclusorily alleging that counsel "fail[ed] to investigate the facts of the case," Def.'s Initial Pet., and the supplement claiming that he "fail[ed] to investigate and present to the Court mitigating evidence at sentencing," Def.'s Suppl. at 1. The government contends that King's supplement must be dismissed as time-barred and that his initial petition must be denied as insufficiently pleaded. <u>See</u> Gov't's Opp'n to Def.'s Initial Pet. & to Def.'s Suppl [ECF No. 55] ("Gov't Opp'n") at 15–24. For the reasons explained below, the Court agrees: King's initial petition does not adequately set forth the basis for his motion; his supplement does not relate back to that petition under Federal Rule of Civil Procedure 15(c)(1)(B); and equitable tolling of the limitations period is not warranted. Therefore, the Court will dismiss King's supplement as untimely and deny his petition.

1

**Background**

For approximately two and a half years beginning in August 2015, defendant James Edward King used his position as a Vocational Rehabilitation and Employment counselor with the U.S. Department of Veterans Affairs to steer veterans to deficient educational institutions in exchange for financial benefits from the operators of those schools.  See generally Statement of Offense [ECF No. 7].  Receiving bribes and/or a 7% kickback on funds disbursed by the VA, id. ¶¶ 20, 23, 38, 46, King "repeatedly lied to veterans in order to convince them to attend" the schools involved in his scheme, id. ¶ 50; approved fraudulent documents exaggerating the amount of time veterans spent in class (thereby inflating the amount the VA paid in tuition), id. ¶ 25, 36, 41, 47; and "facilitated the payment of VA funds" to the schools despite "knowing that the students . . . were not receiving the education that was reflected in the" documents he approved, id. ¶ 49; see also id. ¶¶ 21–22, 25(d), 41–42.  King was "at the center of" the conspiracy, serving as the hub through which the rest of the conspirators operated. Sent. Tr. [ECF No. 31] at 23:24–24:19.  In total, the VA paid out more than $2.1 million as a result of the scheme.  Id. at 4:23–25; see Statement of Offense ¶¶ 42, 45.

On October 26, 2018, King pled guilty to three felonies: scheming to deprive the United States of money, property, and honest services through the use of interstate wires in violation of 18 U.S.C. §§ 1343, 1346; bribery in violation of 18 U.S.C. § 201(b)(2); and falsification of records in violation of 18 U.S.C. § 1519.  Information [ECF No. 1] at 5, 16–17; Plea Agreement [ECF No. 6] at 1–3.  This Court then sentenced him to 132 months' imprisonment followed by 36 months of supervised release, a substantial variance downward from the Guidelines range of 168–210 months.  See Judgment [ECF No. 19] at 3–4; Sent. Tr. at 26:12–16, 59:8–60:25.  Judgment was entered on February 25, 2019.  Judgment at 1.

On January 28, 2020, King submitted a letter to the Court requesting that A.J. Kramer, the Federal Public Defender in this District, be appointed to represent him "in [his] effort to seek justice in [his] case, post-conviction" and to assist in filing a petition under 28 U.S.C. § 2255.  See Letter, Feb. 3, 2020 [ECF No. 27] at 1.  Shortly thereafter, on February 18, 2020, Kramer filed the instant motion, seeking to invalidate King's sentence on the grounds "that Mr. King's counsel was ineffective in failing to investigate the facts of the case, as well as in advising Mr. King about the sentence he faced."  Def.'s Initial Pet.  Kramer also indicated that he would "order the necessary transcripts" and "request[ed] [that he] be allowed to supplement the motion after they are obtained and counsel has had a chance to consult with Mr. King in detail about the motion."  Id.  This request echoed a letter King had submitted to the Court the previous August, expressing frustration that he had been unable to "obtain[] copies of pertinent case documents in preparation for filing a habeas corpus motion pursuant to 28 U.S.C. [§] 2255."  See Letter, Aug. 30, 2019 [ECF No. 25].  The Court acknowledged Kramer's "indicat[ion] that he will supplement the motion" in an Order on March 10, 2020 [ECF No. 30], but the Court neither granted nor denied the request.

But no supplement arrived.  The Court twice ordered King to file a supplement.  See Min. Order, Sept. 3, 2020; Min. Order, Mar. 26, 2021.  King directed his then-attorney not to file anything by the first Court-imposed due date because he wished to obtain new counsel, see Resp. to Ct. Order, Oct. 19, 2020 [ECF No. 39], and no filing was made by the second deadline due to the inadvertence of that new attorney, see Mot. to Allow Late Filing [ECF No. 50] at 1.  King's request for new counsel was processed in December 2020, and present counsel entered his appearance on King's behalf on December 22, 2020.  See Entry of Appearance [ECF No. 41].  King also filed two ultimately unsuccessful motions for compassionate release during the pendency of his § 2255 petition.  See Mot. for Compassionate Release, May 25, 2020 [ECF No.

32]; Order, July 6, 2020 [ECF No. 38]; Mot. for Compassionate Release, Dec. 28, 2020 [ECF No. 42]; Mem. Op. & Order, Mar. 9, 2021 [ECF No. 46].

On October 18, 2021, having sought and received leave to late-file, see Mot. to Allow Late Filing; Min. Order, Oct. 18, 2021, King filed a supplement to his § 2255 petition more than four months after the Court's most recent deadline and twenty months after the submission of his initial petition.[1]  See generally Def.'s Suppl.  Like his initial petition, King's supplement argues that his attorney rendered constitutionally ineffective assistance, with the supplement making the more specific claim that counsel "fail[ed] to investigate and present to the Court mitigating evidence at sentencing."  Id. at 1; accord id. at 11–12.  King highlights several bizarre and seemingly derogatory statements made at sentencing, see id. at 5–6, 14,[2] and he accuses his counsel of failing to engage in even a cursory investigation of his background and, as a result, not presenting "powerful" mitigating evidence regarding King's mental health and family circumstances, id. at 11–16.

The government opposes King's petition, arguing both that he has not demonstrated that his counsel was ineffective and, more pressingly, that the supplement is untimely and thus should not be considered.  The government argues that the supplement does not satisfy Federal Rule of Civil Procedure 15(c)(1)(B)'s test for when an amended pleading relates back to a timely initial

---

[1] To be clear, neither the Court's setting of deadlines for filing the supplement nor its granting leave to late-file imply any conclusion regarding the supplement's timeliness under § 2255(f).  Indeed, where a document's timeliness depends on its contents, as here, it is not only permissible but advisable to "freely grant" leave to amend, if only so that a proper timeliness analysis may take place.  See Fed. R. Civ. P. 15(a)(2)

[2] These included: repeated comments about King's "bad personality" and his not being a "mainstream American" (possibly a euphemistic reference to King's race), e.g., Sent. Tr. 44:15–16 ("When I first met Mr. King, I will be honest, I didn't think he had a good personality at all."); id. at 46:3–4 ("He's got a bad personality, and he's not a mainstream American."); speculation that, due to his "bad personality," King thought "the only way to get ahead was to do dishonest things," id. at 47:7–10; see also id. 45:2–6 ("I think throughout his life, I think he's had a bad personality which has caused him to become a loner. So his only way . . . to get ahead in life to some extent has been to do things that were not honest."); and a discussion of how "the greatest show of a person's personality . . . is when they're given power over somebody else" and how King "didn't respond well when put in that position of authority," id. at 45:7–14.

4

filing, and it also contends that equitable tolling of the one-year limitations period is not appropriate. See Gov't Opp'n at 15–24. Unsurprisingly, King disagrees, arguing that the supplement does relate back and suggesting that equitable tolling is warranted due to the difficulties imposed by the COVID-19 pandemic. Pet'r's Reply to Gov't Opp'n [ECF No. 58] ("Def.'s Reply") at 1–3. Briefing is now complete, and the petition is ripe for decision.

## Analysis

"A prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence" if the sentence is "subject to collateral attack." 28 U.S.C. § 2255(a). In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress imposed a "1-year period of limitation" on petitions filed under § 2255, a provision now codified at 28 U.S.C. § 2255(f). See Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220. Section 2255(f)'s clock starts, as relevant here, on "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(f)(1); "[i]f a criminal defendant does not appeal [his conviction], the judgment of conviction becomes final when the time period for filing an appeal expires," United States v. Booker, 564 F. Supp. 2d 7, 12 (D.D.C. 2008). Since King had fourteen days to appeal following the entry of judgment in his case on February 25, 2019,[3] see Fed. R. App. P. 4(b)(1)(A), King's judgment became final for purposes of § 2255(f) on March 11, 2019. In order to be timely, therefore, any § 2255 petition must have been filed by March 11, 2020.

It is uncontested that King's initial petition was timely filed, as it was submitted on February 18, 2020. It is equally obvious that his supplement, filed on October 18, 2021, falls outside of AEDPA's limitations period. Moreover, the parties appear to agree that the initial

---

[3] Although King waived nearly all of his appeal rights in his plea agreement, he did retain the right to appeal on the basis of ineffective assistance of counsel. See Plea Agreement at 8.

petition cannot stand on its own, as it violates Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Habeas Rules") by failing to "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground."[4] The Court agrees.  Hence, King's § 2255 petition must be denied unless his amended petition (incorrectly styled as a supplement)[5] qualifies for some alteration in the computation of the limitations period, whether by relation back or equitable tolling.  The Court will address these two methods in turn.

## I.   **Relation Back**

The Federal Rules of Civil Procedure apply to § 2255 proceedings "to the extent that they are not inconsistent with any statutory provisions" or with the Habeas Rules.  Habeas Rule 12.  In particular, an "application for a writ of habeas corpus . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions."   28 U.S.C. § 2242.   As a consequence, Federal Rule of Civil Procedure 15 governs the amendment of petitions filed under § 2255.  See Mayle v. Felix, 545 U.S. 644, 654–55 (2005); Hicks, 283 F.3d at 387 ("Section 2255's 'period of limitation' is a statute of limitations like any other, and like any other is subject to the principles of relation back.").  Under Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original

---

[4] The government explicitly argues that Rule 2 requires that the initial petition, if un-supplemented, be denied for being "vague and conclusory."  See Gov't Opp'n at 15–16.  King does not dispute the government's position in his reply, and he adopts the Court's prior description of the petition as "bare-bones," Def.'s Reply at 1 (quoting Order, Mar. 10, 2020).  Indeed, the petition itself, which requests leave to supplement after the acquisition of further records, suggests that it was never intended to stand alone.

[5] See United States v. Hicks, 283 F.3d 380, 385 (D.C. Cir. 2002) (explaining that amendments "rest on matters in place prior to the filing of the original pleading" while supplements "set[] forth . . . events which have happened since the date of the pleading sought to be supplemented." (citation omitted))

pleading." An otherwise-untimely pleading that satisfies this test will be considered to have been filed on the date of the original pleading for timeliness purposes.

But while Rule 15's provision for relation back "relaxes . . . the statute of limitations," it "does not obliterate" it. Mayle, 545 U.S. at 659. Instead, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims," id.; "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," id. at 650. "[E]ven an amendment that shares 'some elements and some facts in common' with the original claim does not relate back if its effect is 'to fault [the defendants] for conduct different from that identified in the original complaint.'" Jones v. Bernanke, 557 F.3d 670, 674 (D.C. Cir. 2009) (alteration in original) (quoting Meijer, Inc. v. Biovail Corp., 533 F.3d 857, 866 (D.C. Cir. 2008)); see also Meijer, 533 F.3d at 866 ("The underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint."). The D.C. Circuit and the Supreme Court have both explicitly rejected the position that the relevant "conduct, transaction, or occurrence" can be as broad as "the habeas petitioner's trial, conviction, or sentence." Mayle, 545 U.S. at 656–57; Hicks, 283 F.3d at 388 (rejecting position that "the relevant 'occurrence' is the claimant's trial and sentencing").

King's initial § 2255 petition made the following allegations: "that Mr. King's counsel was ineffective in failing to investigate the facts of the case, as well as in advising Mr. King about the sentence he faced." Def.'s Initial Pet. The supplement, meanwhile, "is based on . . . trial counsel's failure to investigate and present to the Court mitigating evidence at sentencing." Def.'s Suppl. at 1; accord id. at 11 ("[T]rial counsel failed to investigate King's 'history and characteristics' and subsequently present such information to the Court in order to mitigate King's sentence."). The

question, then, is whether these two claims are united by a "common core of operative facts" such that the supplement's ineffective assistance claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B); Mayle, 545 U.S. at 659.

The government makes two related arguments for why King's supplement does not relate back to his initial petition.  First, it contends that, because "the original filing contained no operative facts," there is, in effect, nothing for the supplement to relate back to.  Gov't Opp'n at 17; see also id. ("[Rule 15] does not provide for relation back to 'naked assertions devoid of further factual enhancement.'" (quoting U.S. ex. rel. Miller v. Bill Harbert Int'l Constr., 608 F.3d 871, 882 (D.C. Cir. 2010) (per curiam))).  The government also contends that "the claims in the supplement 'depend upon events separate in "both time and type" from the originally raised episodes,'" id. at 20 (quoting Mayle, 545 U.S. at 657), since the initial petition's failure-to-investigate argument "appears to refer to counsel's alleged missteps in the pre-plea phase of the case" while the supplement relies on "events that occurred in preparation for sentencing," id.[6] King disagrees, responding that "nothing in the filing indicates that the failure to investigate claim should be so limited" as the government suggests.  Def.'s Reply at 2.  Citing ABA standards, he notes that "[a] defense attorney's duty to investigate the facts of a case [is] ongoing," and that duty "includes facts which are related to the sentencing of the defendant."  Id.  Since failing to investigate relevant facts at sentencing is one way in which an attorney could "fail[] to investigate the facts of the case," King thus contends that the supplement merely "add[s] to or amplif[ies] the

---

[6] The parties seem to agree that the initial petition's second claim—that counsel "was ineffective . . . in advising Mr. King about the sentence he faced"—is irrelevant.  See, e.g., Gov't Opp'n at 20 n.18; Def.'s Reply at 2–3 (arguing for relation back exclusively on the basis of the initial petition's failure-to-investigate claim).

facts already alleged in support of a particular claim" and so relates back to the initial petition. Def.'s Reply at 2 (quoting Hicks, 283 F.3d at 388).

Both sides make good points, and the Court tends to agree with King that the initial petition should not be read to refer only to counsel's pre-plea conduct (even if most readers of the petition would, like the government, think first of pre-trial, rather than pre-sentencing, investigations).  But the Court need not linger on that interpretive question because King's argument has a more fundamental problem—it relies on an impermissibly broad understanding of the relevant "conduct, transaction, or occurrence."

In arguing that the supplement's sentencing-stage claim relates back to the initial petition, King necessarily argues that counsel's failures at sentencing "arose from the same conduct, transaction or occurrence" as "failing to investigate the facts of the case."  And by King's own interpretation, the initial petition's claim could encompass failures to investigate at any point during the case.  See Def.'s Reply at 2.  King's argument would thus permit relation back of claims as temporally disparate as failing to interview a key witness on the first day of the representation and the present claim of incompetently presenting mitigating evidence at sentencing.  Implicit in King's argument, then, is the premise that the relevant "conduct, transaction, or occurrence" is the conduct of his attorney over the entirety of his prosecution.  The Court is obligated by binding precedent to reject this premise.[7]  E.g., Mayle, 545 U.S. at 656–57; Hicks, 283 F.3d at 388.  The

---

[7] The fact that both claims specify the same way in which counsel was ineffective (failing to investigate facts) does not save King's relation back argument, because the allegedly deficient "conduct" still spans the entirety of his prosecution.  In other words, the fact that the initial petition is conceptually narrower than "King's counsel was ineffective" does not overcome the temporal breadth of the claim—he has still not identified a sufficiently narrow "common core of operative facts."  Cf. United States v. Gonzalez, 592 F.3d 675, 680 (5th Cir. 2009) (per curiam) ("New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision.").

"common core of operative facts uniting the original and newly asserted claims" must be more discrete than trial counsel's conduct over the course of an entire case.[8]  Mayle, 545 U.S. at 659.

Many courts have rejected relation back in analogous cases.  In McLean v. United States, No. 04-13534, 2005 WL 2172198 (11th Cir. Sept. 8, 2005), the Eleventh Circuit held that a timely claim that counsel "did not adequately prepare for trial" could not support relation back of a later argument that counsel failed to show the defendant a video of a drug transaction before plea negotiations.  2005 WL 2172198, at *2.  Despite the latter claim being one way in which counsel failed to adequately prepare, the court held that the initial claim was alleged at too "high [a] level of generality" because "a plethora of potential claims regarding pretrial and trial errors can fit under the umbrella of failure to adequately prepare for trial."  Id. (citing Mayle, 545 U.S. at 661).  And in United States v. Hall, Crim A. No. 04-543 (BAH), 2018 WL 6434772 (D.D.C. Dec. 7, 2018), Chief Judge Howell held that an amended petition's argument of ineffective assistance due to counsel not moving to dismiss the indictment on procedural grounds did not relate back to an earlier claim that "significant aspects of [petitioner's] defense have been overlooked by defense counsel."  2018 WL 6434772, at *5.  The timely petition, Chief Judge Howell noted, "failed to raise any facts from which an ineffective assistance of counsel claim based on a failure to dismiss the indictment could be derived."  Id.; see also United States v. Woods, No. 11-40046-01-JWL, 2016 WL 3743197, at *1–2 (D. Kan. July 13, 2016) (holding that, because defendant's timely-filed petition alleged ineffective assistance of counsel on the basis of "broad categories of conduct

---

[8] This conclusion can also be framed in terms of notice.  As construed by King, his initial claim served to notify the government only that he would be making a failure-to-investigate claim without narrowing its timeframe, essentially requiring the government to prepare for any conceivable argument of that sort related to the years-long investigation and prosecution of King.  That is, it failed to give any real notice at all.  Cf., e.g., Young Women's Christian Ass'n of Nat'l Cap. Area, Inc. v. Allstate Ins. Co. of Can., 214 F.R.D. 1, 4 (D.D.C. 2003) (claim of bad faith conduct did not relate back, even though the "behavior alleged in the new claim arguably could build upon the 'core operative facts' of the [original] complaints," because "nothing in the earlier complaints gave notice to the defendants that they would be required to defend against a . . . claim of bad faith behavior" (citations omitted)).

such as 'failure to investigate or prepare witnesses,'" "there is no amendment that could 'relate back' to any specific claims raised.").

Moreover, King's theory of relation back would create a sizable loophole in § 2255(f)'s strict one-year limitations period.  As the Court noted in Mayle, "[i]f claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."  545 U.S. at 662; accord Hicks, 283 F.3d at 388 ("Such a result would be difficult to square with Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions."). Permitting relation back—for which there is no time limit—on the basis of broad and conclusory allegations pertaining to conduct over the course of a petitioner's entire case would create a simple mechanism by which defendants could effectively nullify Congress's decision to impose a one-year time limit on § 2255 petitions.  E.g., Hill v. Mitchell, 842 F.3d 910, 925 (6th Cir. 2016). Courts regularly reject attempts to file such "placeholder motions" for precisely this reason.[9]  See, e.g., Woods, 2016 WL 3743197, at *2 ("[T]he strict AEDPA limitations period would be rendered illusory if a petitioner . . . could circumvent it at will by filing a timely, albeit threadbare, 'place holder' § 2255 petition incanting the vaguest of buzzwords about his claims, then avail himself of relation back principles to fill in those claims at his leisure . . . ." (citation omitted)); United States v. Diallo, No. 1:12-cr-357 (LMB), 2014 WL 12523773, at *1 (E.D. Va. Mar. 4, 2014) (concluding

---

[9] It is worth noting that King himself uses this phrase to describe his initial petition.  See Def.'s Reply at 2 n.1.  While filing a placeholder motion could be permissible when compelled by extraordinary circumstances (i.e., when equitable tolling is warranted), a broad and conclusory placeholder motion cannot support relation back.

that a placeholder motion "would essentially undermine Congress's intent to limit the time allowed to launch a collateral attack on a conviction"), aff'd, 581 F. App'x 226 (4th Cir. 2014).[10]

In sum, the Court rejects King's argument that his amended petition relates back to his initial petition for purposes of timeliness under § 2255(f).[11]  King's theory implicitly relies on the impermissible premise that the relevant "transaction or occurrence" is his entire case; such a broad interpretation of Rule 15 would effectively nullify Congress's strict, one-year limitations period on § 2255 petitions.  Accordingly, King's supplement does not relate back to his initial petition under Rule 15(c)(1)(B).

## II.   **Equitable Tolling**

Since King's supplement does not relate back to his initial petition, equitable tolling of the limitations period is the only way for his supplement to be deemed timely.  Like any other statute of limitations, § 2255(f)'s deadline may be equitably tolled, United States v. McDade, 699 F.3d 499, 504 (D.C. Cir. 2012) (citing Holland v. Florida, 560 U.S. 631, 645–49 (2010) (applying equitable tolling to petitions by state prisoners)), but such relief is "typically extended . . . only sparingly," Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990).  "[A] litigant seeking

---

[10] To be clear, a petition does not need to satisfy Habeas Rule 2's "demanding" pleading standard in order to support relation back of a later amendment. See, e.g., Ross v. Williams, 950 F.3d 1160, 1170 (9th Cir. 2020) (en banc) ("Rule 2(c) sets forth only a pleading requirement. The requirements for relation back are different—and explicitly more generous. Rule 15(c)(1)(B) . . . necessarily contemplates that the original pleading may be inadequately pleaded yet still support relation back."). But even Rule 15(c)(1)(b)'s "generous" standard has its limits, and courts may not be so liberal with relation back as to permit a petitioner to raise any new claim out of time just because it arises from the same case as previous timely claims. See Mayle, 545 U.S. at 660–64.

[11] In his reply, King suggests that, if the Court concludes that King's first attorney "fail[ed] to file a placeholder motion which was broad enough to allow for future claims to relate back," then the Court should hold an evidentiary hearing on whether that attorney provided ineffective assistance. Def.'s Reply at 2 n.1. This issue, raised for the first time in King's reply, has not been briefed by the parties and is not properly before the Court at this time. The Court notes, however, that there is no right to counsel in habeas proceedings, so deficient performance by habeas counsel does not violate the Sixth Amendment. E.g., Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002) ("[P]risoners are not entitled to counsel during habeas proceedings and thus cannot state a claim for ineffective assistance during those proceedings."); see also Coleman v. Thompson, 501 U.S. 722, 755 (1991) ("[Previous Supreme Court cases] established that there is no right to counsel in state collateral proceedings."); United States v. King, 4 F. Supp. 3d 114, 125 (D.D.C. 2013) ("There is no constitutional right to appointment of counsel in habeas corpus proceedings." (citing Brown v. Cameron, 353 F.2d 835, 836 n.1 (D.C. Cir. 1965))).

equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Young v. SEC, 956 F.3d 650, 655 (D.C. Cir. 2020) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "To satisfy the first prong, a prisoner must demonstrate not . . . 'maximum feasible diligence,' but just 'reasonable diligence.'" United States v. Rice, 727 F. App'x 697, 701 (D.C. Cir. 2018) (quoting Holland, 560 U.S at 652). As for the second element, "[t]o count as sufficiently 'extraordinary' . . . the circumstances that caused a litigant's delay must have been beyond [his] control," Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 58 (D.C. Cir. 2014), aff'd, 577 U.S. 250 (2016), and "it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy," Smith v. Davis, 953 F.3d 582, 600 (9th Cir. 2020) (en banc).

The Court concludes that equitable tolling is not warranted in this case. First, King and his attorneys did not exercise reasonable diligence in pursuing his § 2255 motion. Most importantly, the Court ordered King to file his supplement by not later than October 19, 2020, giving him seven months from the date of the first petition and six weeks of notice. See Min. Order, Sept. 3, 2020. But King expressly instructed his attorney not to comply with this deadline, apparently due to a pending request for a new attorney. See Resp. to Ct. Order, Oct. 19, 2020 ("Mr. King has informed undersigned counsel that counsel should not file the supplement . . . ."); see also Letter Requesting New Att'y, Dec. 8, 2020 [ECF No. 40] (request for appointment of new counsel dated September 30, 2020). King was given ample opportunity to file his supplement—indeed, he was expressly ordered to do so—but he refused. This suggests a lack of even reasonable diligence in pursuing his rights under § 2255.

Instead, King appears to have decided that compassionate release under 18 U.S.C. § 3582 was the better bet for securing his release and so filed two such motions during the pendency of

13

his § 2255 petition, forcing his attorneys to devote attention to briefing those motions rather than to supplementing his petition.  Although this suggests diligence in attempting to be released from prison, it evinces something more like temporary abandonment of his § 2255 petition.  Finally, King blames the supplement's tardiness principally on delays in completing his psychological evaluation, but King's counsel did not even begin that process until March 2021, three months after he began representing King and more than a year after the expiration of the statutory limitations period.[12]  These three factors together lead the Court to conclude that King and his counsel have not shown reasonable diligence in pursuing the instant petition.

Nor is the Court persuaded that an extraordinary circumstance caused the supplement's untimeliness.  King argues that the government, by contending that equitable tolling is not warranted, "fails to acknowledge the role that COVID-19 has played in the past two years," Def.'s Reply at 2, and he urges that "any delays in filings should be excused by the rare and exceptional circumstances created by the COVID-19 pandemic," id. at 3 (citation and internal quotation marks omitted).  More specifically, in his motion for leave to late-file the supplement, King explained that his psychological evaluation by Dr. Michael O'Connell was greatly delayed by logistical complications attendant to the COVID-19 pandemic.  See Mot. to Allow Late Filing at 1.

The COVID-19 pandemic was and is an extraordinary circumstance by any definition, creating logistical hurdles (to say the least) in almost every aspect of life, legal practice included. But the pandemic "does not automatically warrant equitable tolling[;] . . . the petitioner must

---

[12] King states in his motion for leave to late-file the supplement that the Court "approved the services of Dr. Michael O'Connell to evaluate Mr. King" "[i]n March 2021."  Mot. to Allow Late Filing at 1.  But the Court has independently confirmed that counsel first requested a Criminal Justice Act reimbursement voucher for Dr. O'Connell's services on March 25, 2021, a request that was approved the following day.  Counsel offers no explanation for why he did not make this request until March, but the Court suspects that he was waiting on the adjudication of King's second compassionate release motion, which was denied on March 9.  If so, this delay is ultimately another way in which the supplement's untimeliness is attributable to King's decision to focus on compassionate release in lieu of his § 2255 petition.  Either way, it cuts against a finding of reasonable diligence in supplementing the petition.

establish that he was pursuing his rights diligently <u>and</u> that the COVID-19 pandemic specifically prevented him from" meeting the deadline.   <u>Shepherd v. Asuncion</u>, No. CV 21-4147-JWH(E), 2021 WL 6496744, at *8 (C.D. Cal. Nov. 3, 2021) (quoting <u>Garcia v. United States</u>, Case No. C21-0322JLR, 2021 WL 3403540, at *2 (W.D. Wash. Aug. 4, 2021)); <u>see also</u> <u>Hines v. United States</u>, No. 17-CR-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) ("While the effects of the COVID-19 pandemic could conceivably present extraordinary circumstances, '[a] petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown.'" (alteration in original) (quoting <u>United States v. Aigbekaen</u>, Crim. No. JKB-15-0462, 2021 WL 1816967, at *1 (D. Md. May 6, 2021)).

To be sure, King does more than gesture vaguely at the pandemic: he, his counsel, and Dr. O'Connell all appear to have confronted real obstacles that are likely frustratingly familiar to millions of people around the country.   But even accepting that COVID-19 constitutes an extraordinary circumstance for purposes of equitable tolling, the Court is not persuaded that the pandemic was the <u>cause</u> of the supplement's untimeliness.   First, as the Court noted above, King was able to file two motions for compassionate release—and his successive attorneys were able to brief those motions—during the pandemic.   <u>Cf.</u> <u>United States v. Marshall</u>, No. 5:18-cr-00122-KKC-MAS-1, 2021 WL 3854469, at *2 (E.D. Ky. Aug. 5, 2021) ("Marshall was able to file and brief two separate motions for compassionate release during the pandemic . . . . [and] shortly after the § 2255 limitations period's expiration, [which] undermine[s] his [argument] that the pandemic precluded him from filing a § 2255 motion before the . . . deadline."), <u>adopted</u>, 2021 WL 3854749 (E.D. Ky. Aug. 27, 2021).   Second, although the completion of Dr. O'Connell's evaluation may have been delayed by the pandemic, there is no indication that it was also responsible for counsel's

three-month delay in requesting the evaluation in the first place.  COVID-19 was thus not the only reason that Dr. O'Connell's report was not finished until October 2021.

Finally, and perhaps most importantly, the Court fails to see why it was necessary to wait for Dr. O'Connell's report before filing a supplement.  Although the report was clearly helpful in preparing the supplement's background section, see Def.'s Suppl. at 7–11; Def.'s Suppl. Ex. A, King neither cites nor relies on the report in his legal argument, see Def.'s Suppl. at 11–16.  Rather, King's argument focuses, as it should, on what his counsel failed to do and on the prejudice King suffered as a result.  Id.  The evaluation was far from indispensable to the petition, and King and his attorneys could have filed a supplement that competently made the present ineffective assistance argument before receiving Dr. O'Connell's report.[13]  Instead, waiting for the report appears to have been a strategic decision about how to present the most compelling argument rather than an unavoidable complication of the COVID-19 pandemic.

To be sure, the evaluation was not pointless or mere filler—King's ineffective assistance argument is made more persuasive by illustrating the kind of mitigating evidence that could have been presented at sentencing.  And an attorney is not usually obligated to prepare a filing in the fastest time possible nor required to forego helpful but time-consuming avenues of inquiry.  This was not, however, the usual case.  King and his attorneys were working on borrowed time, and equitable tolling is a safe harbor for extraordinary cases, not a blank check for filings delayed in some measure by external forces.  In order to warrant equitable tolling (relief "typically

---

[13] Relatedly, King tries to distinguish his two compassionate release motions from his § 2255 supplement on the basis that the former "did not require lengthy phone calls with [counsel] and relied largely on records which were otherwise available to counsel."  Def.'s Reply at 3 n.2.  But as with Dr. O'Connell's report, the Court struggles to see what additional records were required to support the supplement's ultimate ineffective assistance argument—again, none are cited in the supplement's argument section, Def.'s Suppl. at 11–14—or why the supplement required lengthy communication with King when compassionate release motions centered on King's medical status and the conditions of his imprisonment did not.  Instead, King makes a straightforward ineffective assistance claim, based principally on publicly available documents like the transcript of the Court's sentencing hearing.  See Def.'s Suppl. at 5–7, 14.

extended . . . only sparingly," Irwin, 498 U.S. at 96), King needed to file a supplement providing adequate notice of his claims as soon as practicable with the exercise of reasonable diligence.[14] On these facts, the Court cannot conclude that he did so.  Given that King and his attorneys did not act with reasonable diligence in preparing and filing his supplement and that factors other than the COVID-19 pandemic caused the supplement's untimeliness, the Court finds that equitable tolling is not warranted.

Other cases from this Circuit support this conclusion.  In the last ten years, courts in this Circuit have granted equitable tolling of § 2255(f)'s limitations period in only three cases, and each is distinguishable and instructive.  In United States v. McDade, the D.C. Circuit tolled the one-year deadline for a petitioner (1) who reminded counsel repeatedly about the deadline only for his attorney to miss the cut-off "due solely to his own inadvertence"; (2) who gathered evidence in support of his motion from prison by securing and forwarding to counsel "affidavits from three potential impeachment witnesses regarding what they would have testified at his trial had they been called in his defense"; and (3) whose motion was filed only thirty days after the expiration of the statutory limitations period.  McDade, 699 F.3d at 505.  King's conduct bears little resemblance to McDade's: rather than pestering his attorney to file his supplement in a timely fashion, King affirmatively directed his attorney not to file anything by the Court's deadline, and rather than engaging in independent factual investigation in support of his motion, King turned his attention to other mechanisms of securing his release.

Next, in United States v. Wilson, Crim. No. 04-128-18 (RMC), 2013 WL 12345033 (D.D.C. Mar. 25, 2013), Judge Collyer granted equitable tolling to a petitioner who submitted his § 2255 petition in reasonable reliance on a misleading letter from his attorney.  2013 WL

---

[14] Under the relation-back doctrine, then, an additional submission containing further factual development (such as Dr. O'Connell's finished report) would have also been deemed timely and considered by the Court.

12345033, at *3.  Counsel told the defendant in a letter dated January 3, 2011, that the Supreme Court had denied his petition for certiorari, and, assuming that he had until January 3 of the following year to file a § 2255 petition, the defendant "set himself diligently to preparing his motion," which he mailed to the court on December 30, 2011.  Id.  But unbeknownst to him, the Supreme Court had actually denied cert on December 13th, so Wilson's petition was in fact two weeks late.  Id.  This, Judge Collyer concluded, constituted extraordinary circumstances justifying equitable tolling.  Id. ("Mr. Wilson does not seek to excuse himself because of anyone's negligence, and he does not claim ignorance of the law or procedures. . . . [His] reliance on [his attorney's] letter . . . was understandable and legitimate . . . .").  There was no such reasonable reliance or legitimate confusion about the deadline in this case: King was well aware of the time limit imposed on § 2255 petitions, see Letter, Aug. 30, 2019; Letter, Feb. 3, 2020, yet he still failed to file his supplement until more than nineteen months (not two weeks) after that period lapsed.

Finally, this Court permitted equitable tolling in United States v. Thomas, 72 F. Supp. 3d 24 (D.D.C. 2014), on the basis that the Court had set a deadline for filing the amended petition after the expiration of the statutory limitations period.  72 F. Supp. 3d at 27  ("[T]he government overlooks a crucial factor: if Thomas filed his supplemental memorandum late, it was because this Court told him to do so.").  But again, Thomas is easily distinguishable.  For one, Thomas actually met the court's deadline, and his amended petition arrived less than two months after the statutory deadline.  Id.  King, by contrast, missed two deadlines—one intentionally and the other by inadvertence of counsel—and only filed his supplement nineteen months after the limitations period expired.  Finally, Thomas was proceeding pro se, a fact the Court found especially pertinent in determining whether equitable tolling was warranted.  Id. ("Thomas can hardly be blamed for relying on the Court's instructions, especially without the benefit of counsel.").  These three cases

18

bolster the Court's conclusion that King and his attorneys failed to exercise the kind of diligence necessary to merit equitable tolling.

*        *        *        *        *

The Court is sympathetic to the fact that King's far-from-frivolous ineffective assistance claim will not receive a merits adjudication due to its untimeliness.[15]   But well-established principles of relation back, especially when combined with the need to give effect to § 2255(f)'s one-year limitations period, foreclose consideration of his supplement, and the record does not demonstrate that equitable tolling of the limitations period is warranted here.   Accordingly, the Court will dismiss King's amended petition as untimely and deny his timely but unsupported initial petition.   A separate order will issue on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: <u>February 25, 2022</u>

---

[15] Although the Court does not reach the merits of King's ineffective assistance argument, it will nonetheless note its grave doubts about his likelihood of success on that claim.   While portions of counsel's presentation at sentencing may have been counterproductive, King's attorney did provide several reasons for leniency, including King's age, the low chance that he would recidivate, and King's relationship with his daughter.   See Sent. Tr. at 47:24–50:6.   King has submitted no evidence that his attorney failed to consult with him regarding mitigating evidence, and many of the leads King now faults counsel for not investigating were either not supported or contradicted by the PSR.   See Presentence Investigation Report [ECF No. 14] ¶¶ 105 (quoting King as saying his childhood was "best ever"), 117 (stating that King had sporadically attended counseling but that he "was not diagnosed with any mental health disorders").   Counsel is not constitutionally deficient for failing to further investigate matters he reasonably concludes would not turn up additional evidence.   In short, it is far from clear that King's attorney's failure to further investigate his background and circumstances at the time of his offenses was "outside the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 690 (1984), such that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," id. at 687.   And even if counsel was constitutionally deficient, King would have had great difficulty in showing that those errors prejudiced him.   See id. at 691–96.   This Court's sentence already represented a substantial variance downward from both the Guidelines range and the government's recommendation, see Sent. Tr. at 34:8–12, 59:8–60:25, so King would need to show "a 'substantial,' not just 'conceivable,' likelihood" that this Court would have varied downward even further had his counsel engaged in additional investigation, see Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 112 (2011)).   It is unlikely King could meet that burden even with the mitigating evidence he now puts forward.